UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDI M. MYERS,<br>　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　　　Defendant. | §<br>§<br>§<br>§　Case # 1:19-cv-40-DB<br>§<br>§　MEMORANDUM DECISION<br>§　AND ORDER<br>§ |

## INTRODUCTION

Plaintiff Brandi M. Myers ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 24).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 16, 22. Plaintiff also filed a reply brief. *See* ECF No. 23. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 16) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 22) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on August 29, 2013. Transcript ("Tr.") 19. In both applications, Plaintiff alleged disability beginning July 1, 2013 (the disability onset date), due to: "(1) seizures/epilepsy, blood disorder, headaches/migraines; (2) seizures/ epilepsy; (3) blood disorder (anemia); and (4) headache/ migraines." Tr. 185. Plaintiff's claims

were denied initially on December 30, 2013, after which she requested a hearing. Tr. 19. Administrative Law Judge Christopher H. Juge (the "ALJ") presided over a video hearing from Metairie, Louisiana, on June 21, 2016.  Tr. 19, 43-59. Plaintiff appeared and testified from Jamestown, New York, and was represented by Clyde Card, an attorney. *Id*. The ALJ noted that Plaintiff was also represented by attorney Sally Jaroszynski,. Todd S. Capielano, an impartial vocational expert ("VE"), also appeared at the hearing. Tr. 19.

The ALJ issued an unfavorable decision on July 25, 2016, finding that Plaintiff was not disabled. Tr. 19-41. On November 6, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's July 25, 2016 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

2

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his July 25, 2016 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017;

2. The claimant has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*);

4. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2013, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

Tr. 19-41.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on August 29, 2013, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 41. The ALJ also determined that based on the application for supplemental security benefits protectively filed on August 29, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ erred in rejecting Plaintiff's claim at step two of the sequential evaluation, relying solely on opinion evidence that predated the ALJ's decision by more than two years, and also predated Plaintiff's thyroid cancer, two surgeries, and worsening depression. *See* ECF No. 16-1 at 1, 9-14. Plaintiff further argues that because the ALJ relied on stale opinion evidence, he failed to adequately develop the record with relevant and current medical opinion evidence. *Id*. The Commissioner responds that clinical examinations performed during the period Plaintiff asserts she was disabled showed no functional

limitations due to seizures, headaches, depression, or her successful treatment for thyroid cancer, and, as such, the ALJ's conclusion that Plaintiff was not disabled was supported by substantial evidence. *See* ECF No. 22-1 at 2, 5-11.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. As noted above, the ALJ denied Plaintiff's disability claim at step two. For the reasons explained below, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff had no severe impairments.

An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a). Basic work activities include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 404.1522(b).

It is Plaintiff's burden, not the Commissioner's, to demonstrate the functional limitations she claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled); *Diaz v. Shalala*, 59 F.3d 307, 315

5

(2d Cir. 1995) (finding an ALJ can deny benefits based on a lack of evidence on a matter for which the claimant bears the burden of proof). In light of this burden, Plaintiff was specifically required to demonstrate the existence of a severe physical impairment that resulted in an RFC preventing the performance of substantial gainful activity. *See Poupore v. Astrue*, 566 F.3d, 303, 306 (2d Cir. 2009).

As the ALJ explained, and as the evidence demonstrated, Plaintiff did not have an impairment that caused a significant limitation in any of these areas. Tr. 22-36. Following her first seizure in July 2013, examinations showed no physical or psychological abnormalities. Tr. 262. Throughout 2013, 2014, 2015, and 2016, and even after Plaintiff was successfully treated for thyroid cancer, physical and psychological examinations remained normal. *See* Tr. 261-62, 264-65, 279, 282, 287, 292, 299, 303-04, 309, 313, 317, 325, 329, 342-43, 346-47, 358, 363, 382, 386, 408, 412, 416, 420, 433, 437-38, 451-52, 463, 467, 472, 766, 783-84, 804-05, 815, 817, 819, 825, 827, 829, 834, 838, 842, 845-46, 850, 854, 866, 868, 871-72, 874, 884-85, 889, 893-94, 898-99, 902, 911, 916, 920, 926-27, 931-32, 937, 941, 953, 955, 957, 960-61, 970, 975-76, 980, 987-88, 999, 1017, 1021, 1026. Although three of these records contained mental status examinations reporting that Plaintiff "displayed" depression (Tr. 898-99, 1017, 1021), these examinations were otherwise normal and did not document any problems with memory, attention, or concentration.

Plaintiff argues that the ALJ incorrectly relied on the opinion of consultative examiner, Samuel Balderman, M.D. ("Dr. Balderman"), the only medical opinion in this case. Plaintiff further argues that the ALJ "impermissibly interpreted" the medical evidence using "lay judgment." *See* ECF No. 16-1 at 9-14at 9-14. Dr. Balderman performed a consulting neurological examination at the request of the state agency on November 14, 2013. Tr. 302. Plaintiff contends that because Dr. Balderman's opinion was nearly two years before Plaintiff's diagnosis of thyroid cancer and before she developed depression, his opinion did not account for these later conditions.

6

*Id*. at 10. Plaintiff reported that her last seizure was a month earlier and she had been having two to three grand mal seizures a month. Tr. 302. She also reported headaches twice a week lasting up to 12 hours, with nausea, vomiting, and light and sound sensitivity. *Id*. Dr. Balderman diagnosed seizures and headaches and opined that Plaintiff should not work from unprotected heights or operate heavy machinery. Tr. 304.

In this case, the ALJ noted Dr. Balderman's opinion that Plaintiff should be restricted from work involving unprotected heights or requiring operation of unprotected machinery. Tr. 25, 304. As the ALJ explained, even when a claimant has been diagnosed with a seizure disorder, if the only limitations resulting from that disorder involves observing standard seizure precautions, such limitations do not have a significant effect on work at any exertional level. Tr. 32-33. *See* Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8 ("A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels."). Dr. Balderman's examination identified no abnormalities, and his opinion only identified restrictions that involved standard seizure precautions and that did not significantly limit Plaintiff's ability to do basic work activities. Tr. 303-04.

Dr. Balderman's examination findings and opinions were not the only evidence the ALJ cited in support of his finding that Plaintiff had no severe impairments. Tr. 21-36. The ALJ also discussed Plaintiff's neurological treatment records and diagnostic testing results, including EEG and MRI studies. Tr. 26-32. The ALJ noted that in a neurological examination report dated June 16, 2014, Satish K. Mongia, M.D. ("Dr. Mongia") stated that Plaintiff did not have any specific medical problem.  Tr. 29, 824. She denied having any seizures, blank spells, dizziness, or vertigo since her last spell in September 2013.  Tr. 824. Dr. Mongia noted that she was taking medication regularly and was doing fine.  *Id*. Plaintiff reported headache frequency of once every three months

7

and described the headaches as moderate in severity with some transient blurry vision. Tr. 824-25. She also reported having numbness and tingling in her upper extremities for quite some time which would occur on the right or left, and which was not associated with the headaches. Tr. 825. She said she slept and ate well. *Id*. Upon examination, her thyroid was not enlarged; muscle tone and power were normal in both upper and lower extremities; there was no evidence of sensory loss; and Tinel's sign was noted as doubtfully positive. *Id*.

Dr. Mongia concluded that Plaintiff's history was highly suggestive of primary generalized tonic and clonic seizures. Tr. 825-26. Dr. Mongia opined that Plaintiff's headaches were probably due to migraine disorder, and episodes of numbness and tingling in the arms and hands could be related but could possibly be related to carpal tunnel syndrome. Tr. 826. EMG with nerve conduction studies on June 23, 2014 was negative with no evidence of carpal tunnel syndrome or ulnar or median nerve abnormality bilaterally. Tr. 809. On June 25, 2014, a 24-hour EEG recording was reported as unremarkable with no definite focal or seizure abnormalities. Tr. 814. Plaintiff returned to Dr. Mongia on July 9, 2014 and reported that her seizures and headaches were under control. Tr. 829.

On May 14, 2015, Plaintiff saw Marc Frost, M.D. ("Dr. Frost") at DENT Neurologic Institute. Tr. 925. Plaintiff reported that she had been seizure-free on medication for about two years but suffered a "blank out episode" a few weeks prior when she was having significant diarrhea and dehydration while under evaluation for thyroid cancer. *Id*. As the ALJ noted, Dr. Frost reported that prior imaging and EEG studies were normal, just as previously described by Dr. Mongia. Tr. 29, 925. Although Plaintiff reported a history of migraine headaches, she told Dr. Frost her headaches were "very infrequent". Tr. 925. Dr. Frost assessed seizure and headache, but he noted that Plaintiff had been seizure free on Keppra. Tr. 927. Dr. Frost saw no reason to change Plaintiff's medications, and she was advised to return for follow-up in one year. *Id*.

8

The ALJ also noted that diagnostic testing results reported normal findings or showed abnormalities not supportive of epilepsy diagnosis over time. Tr. 32. The ALJ also noted that Plaintiff's neurological testing was described as normal or unremarkable by both of Plaintiff's treating neurologists, Dr. Mongia and Dr. Frost *Id*. As the ALJ explained, objective testing did not indicate an etiological basis for seizure disorder, and the most recent neurological assessment during Plaintiff's August 2015 hospitalization, which included MRI and EEG testing, resulted in a diagnostic impression of pseudo-seizures. *Id*. Based on the foregoing, the ALJ properly concluded that the weight of the evidence indicated no medically determinable seizure disorder, and even assuming a medically determinable impairment of seizures (or pseudo-seizures), in the alternative, the condition was not shown to be severe based on the clinical reports indicating good control on medication with very rare episodes, as noted above. Tr. 32.

Plaintiff also claims that Dr. Balderman's opinion is "stale" because Plaintiff later developed thyroid cancer and depression. *See* ECF No. 16-1 at 10-11. This argument is also unpersuasive, as the ALJ's analysis demonstrates that he did not "rely" on Dr. Balderman's opinion to conclude that Plaintiff was not disabled at step two. Thus, whether or not the opinion was stale is irrelevant. Furthermore, there is no "unqualified rule that a medical opinion is superseded by additional material in the record," especially where the additional evidence does not raise doubts as to the reliability of the opinion at issue. *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016); *see also Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6-7 (W.D.N.Y. May 12, 2017) (finding that a medical opinion issued two years prior to the ALJ's decision was not stale where there was no evidence that the claimant's condition significantly deteriorated after the opinion was issued, and the opinion was consistent with the record as a whole)).

As the ALJ noted, Plaintiff first reported symptoms when she was found to have a thyroid nodule in January 2015. Tr. 35. The ALJ acknowledged that thyroid cancer is a medically determinable impairment, and the medical evidence documented Plaintiff's associated symptoms, including diarrhea and fatigue. *Id*. But as the ALJ explained, the evidence did not establish persistence of related symptoms or functional limitations for a period of at least 12 months (or any expectation of such). *Id*. The ALJ noted that good resolution of Plaintiff's symptoms was indicated in July and September 2015 following thyroid surgeries and commencement of hormone replacement therapy. *Id*. Accordingly, the ALJ properly concluded that Plaintiff's thyroid condition was a medically determinable impairment, but it was not severe und did not meet the durational requirement.

The record here demonstrates that Plaintiff had no functional limitations before or after Dr. Balderman wrote his opinion. There were none caused by her seizures; there were none caused by her headaches; there were none caused by her thyroid cancer; and there were none caused by her depression. *See* Tr. 261-62, 264-65, 279, 282, 287, 292, 299, 303-04, 309, 313, 317, 325, 329, 342-43, 346-47, 358, 363, 382, 386, 408, 412, 416, 420, 433, 437-38, 451-52, 463, 467, 472, 766, 783-84, 804-05, 815, 817, 819, 825, 827, 829, 834, 838, 842, 845-46, 850, 854, 866, 868, 871-72, 874, 884-85, 889, 893-94, 898-99, 902, 911, 916, 920, 926-27, 931-32, 937, 941, 953, 955, 957, 960-61, 970, 975-76, 980, 987-88, 999, 1017, 1021, 1026. Moreover, Plaintiff repeatedly told her treating physician that her seizures and headaches were under control. Tr. 817, 819, 829. Her thyroid cancer was successfully treated with a thyroidectomy and radiation treatment. Tr. 951, 1016. Based on the foregoing, Plaintiff fails to show that the ALJ's consideration of Dr. Balderman's opinion, as one piece of evidence among many that supported the finding that she had no severe impairments, was improper.

While the ALJ has a duty to develop the record, Plaintiff had the burden of demonstrating functional limitations that precluded any substantial gainful activity. *See* 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. §§ 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say you are disabled.…"), 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); SSR 96-4p; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Because Plaintiff ultimately bears the burden of proving that he is disabled, the ALJ's duty to develop the record is not absolute. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009). "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen*, 482 U.S. at 146 n.5. Further, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefit claim." *Rosa*, 168 F.3d at 79 n.5. The Court finds no such gaps in the record here, and Plaintiff has therefore failed to meet her burden.

As for Plaintiff's claim that the ALJ "relied on his own lay judgment in interpreting the raw medical data" (*see* ECF No. 16-1 at 12-14), that claim is without merit. When the medical evidence is clear about a claimant's limitations, the ALJ can render a common sense judgment without a physician's assessment. *See Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). In this case, essentially all of the evidence showed that Plaintiff had no limitations performing basic work activities, and therefore did not require expert interpretation.

Clinical examinations following Plaintiff's alleged onset date showed that she had full strength, walked normally, had no range of motion limitations, was alert, oriented, and cooperative, and had normal attention, concentration, and memory, among all the other normal findings. *See* Tr. 261-62, 264-65, 279, 282, 287, 292, 299, 303-04, 309, 313, 317, 325, 329, 342-43, 346-47, 358, 363, 382, 386, 408, 412, 416, 420, 433, 437-38, 451-52, 463, 467, 472, 766, 783-84, 804-05, 815, 817, 819, 825, 827, 829, 834, 838, 842, 845-46, 850, 854, 866, 868, 871-72, 874, 884-85, 889, 893-94, 898-99, 902, 911, 916, 920, 926-27, 931-32, 937, 941, 953, 955, 957, 960-61, 970, 975-76, 980, 987-88, 999, 1017, 1021, 1026.The only meaningful "abnormality" in any of these examinations was that Plaintiff showed some depression on three occasions, but she otherwise had entirely normal mental functioning. Tr. 898-99, 1017, 1021.

For all these reasons, the Court finds that substantial evidence supports the ALJ's step two finding, and there is no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 16) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 22) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE